# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## ALMA BERNICE DOBBINS, ET ALS. V. A. N. PETTIGREW, TRUSTEE, ET ALS.

June 14, 1928.

Argued and submitted before Judge Holt took his seat.

1. BILL IN EQUITY—*Demurrer—Allegations of Bill Taken as True.*—Upon demurrer all the allegations of a bill in equity, properly pleaded, are to be taken as true.

2. WILLS—*Construction—Precedents of Little Value.*—In the construction of wills little help can be expected from the prior cases. Each will has its own peculiar verbiage and surrounding circumstances and the object and meaning of the testator must be gathered from these.

3. WILLS—*Construction—Trusts—Remarriage of Widow—Case at Bar.*—In the instant case testator devised his property to his widow in trust. The expressed object of the trust was that "by keeping my estate together as long as possible, it would provide an income for my wife and children at the smallest possible cost." When she remarried, by the express terms of the will, the estate was no longer to be kept together for her benefit. Thereafter it was to be kept together only for the benefit of her children. Her "right, title and interest in his estate of every kind and description *ipso facto* ceased and determined," and then followed this provision, "but this devise (referring to the devise to his wife as trustee) is made subject to the following conditions, that is to say, that so long as my said wife lives, or until she remarries."

  *Held:* That while it was testator's intention to keep his estate together for the purpose of the trust "as long as possible," the whole will and agreement between the testator and his wife showed that testator's confidence in his wife as trustee for the benefit of his children was limited to the period of her widowhood.

4. WILLS—*Construction—Widow as Trustee—Remarriage of Widow—Termination of Trust—Case at Bar.*—In the instant case testator devised his property to his widow in trust. The expressed object of the trust was that "by keeping my estate together as long as possible, it would provide an income for my wife and children at the smallest possible cost," "but in case my said wife remarries, then her right to receive said one-third interest in said rents and profits and in-

come shall immediately cease and determine, and also all right, title, interest and estate of whatsover kind of my said wife in my said real and personal property shall also thereupon immediately cease and determine, that being our understanding as set out above."
By agreement entered into by testator and his wife of the same date as the will, the wife agreed in consideration of the provisions of the will to relinquish her legal rights in testator's estate.

*Held:* That the language quoted was broad enough to include the trust estate in the wife, and reading the will as a whole it was clearly the testator's intention to terminate the wife's trusteeship upon her remarriage. But the trust continued during the minority of his children, whether the wife remained as trustee or not.

Appeal from a decree of the Law and Equity Court of the city of Richmond. Decree for defendants. Complainants appeal.

*Reversed and remanded.*

The opinion states the case.

*Melvin Flegenheimer* and *Wendenburg & Haddon*, for the appellants.

*J. M. Turner, Chas. L. Page* and *J. H. Rives, Jr.*, for the appellees.

CHICHESTER, J., delivered the opinion of the court.

Alma Bernice Dobbins, born November 12, 1902; Vernell Dawes, *nee* Vernell Dobbins, born September 4, 1905; Thelma Louise Dobbins, born November 15, 1911, an infant, and Odell May Dobbins, born January 26, 1912, also an infant, the infants suing by their next friend, Vernell Dawes, on the first day of July, 1927, filed their bill in the Law and Equity Court of the city of Richmond in which they allege that they are the children of Connie J. Dobbins and Pinkey

Williams, who was before her second marriage Pinkey Dobbins; that their father, Connie Dobbins, died September 19, 1912; that on September 29, 1911, Connie Dobbins and his wife, Pinkey Dobbins, entered into a written agreement as to the disposition of his estate and on the same day he made and executed his last will and testament. These papers are made exhibits with the bill and are copied in the margin.*

That Connie J. Dobbins died September 19, 1912, and his will was duly probated, and together with the agreement above mentioned was duly recorded. That on November 29, 1916, Pinkey Dobbins and one Joseph M. Williams were lawfully married. That Con-

* "This agreement made this the 29th [day of September, 1911, between Connie J. Dobbins and Pinkey Dobbins, his wife,

"Witnesseth: That whereas said Connie J. Dobbins has made his will of even date herewith, and whereas in said will said Dobbins has made his wife trustee for his children with full power to manage his property and receive and collect the rents from the real estate and the income from the personal property, and with power in said Pinkey Dobbins to receive one-third of the net rents and profits from such property as her own absolutely, and whereas said Pinkey Dobbins has agreed in such case to relinquish any and all interest or estate in such property in the event she should remarry, and also her right to receive said one-third rents and profits: Now, therefore, it is mutually agreed between the parties hereto that this writing shall be attached to the will of said Connie J. Dobbins and be recorded therewith; and said Pinkey Dobbins does agree and bind herself that in the event of the death of said Connie J. Dobbins and the probating of his will with the aforesaid conditions therein she will accept said one-third of the rents and profits (net) from the real estate left by said Connie J. Dobbins and one-third of the net income from the personal property left by said Connie J. Dobbins in lieu of any estate the law allows her as the widow of said Connie J. Dobbins in his real and personal property, and also agrees and bind herself that in the event she should remarry that then all right, title, interest and estate of every kind and description shall *ipso facto* cease and determine in the property of which her said husband died or possessed real or personal, or also in any property that may be bought as a reinvestment by her as trustee in said will, and that if necessary she will execute all proper deeds or writings conveying or assigning her interest or estate in said property to her children, or to such other parties as they may designate."

"I, Connie J. Dobbins, of the county of Chesterfield, Virginia, hereby revoking all former wills made by me, do hereby make this my last will and testament:

"First: I want all my just debts paid, if any I owe at the time of my death;

"Second: Whereas, my wife, Pinkey Dobbins, has agreed that, in the event she should remarry after my death, she would relinquish and quit-

nie Dobbins left a considerable estate, both real and personal. That on December 12, 1925, Pinkey Williams, formerly Pinkey Dobbins, as trustee under the will, conveyed certain real property of the estate of Connie J. Dobbins, fully described in the bill, to A. N. Pettigrew, trustee, in trust to secure the payment of $1,200.00 with interest, evidenced by certain notes, also described in the bill, and payable to the order of bearer.

The complainants allege that the trust estate created by the will as well as all powers of the trustee, and her individual interest in the estate of her deceased husband, determined upon her marriage to Williams on November 29, 1916. That prior to her remarriage Pinkey (Dobbins) Williams had executed a number of deeds of trust on the real property of her deceased husband and had rendered no account as trustee.

They allege that Pettigrew, trustee, intends to sell this property conveyed to him as trustee on November 24, 1927. "That if this sale is permitted to continue,

claim, in favor of our children, all her right, title, interest and estate in and to all the property, real and mixed, of which I shall die seized and possessed, or entitled to, or which shall belong to my estate at the time of such remarriage, which agreement on her part is evidenced by a writing which is attached to this will, and is to be recorded herewith; and whereas, it is my wish, by keeping my property together as long as possible, to provide an income for my said wife and children, at the smallest possible cost, by the trustee hereinafter mentioned, renting out and collecting the rents from my real estate and by investing and collecting the income from my personal property—I, therefore, give, devise and bequeath all of my property, real, personal and mixed, to my said wife, Pinkey Dobbins, the same to be held by her as trustee, upon the following terms and conditions, to wit: That my said wife as such trustee shall hold the said real, personal and mixed property hereby devised and bequeathed, for the benefit of my children by my said wife, the income thereof, excepting the one-third hereinafter mentioned, to be used by said trustee for the education, maintenance and support of my said children, and that said trustee, in her discretion, is hereby given full power and authority to sell, convey, mortgage or encumber any or all of my said property, real, personal or mixed, and as such trustee to execute full and complete deeds, or assignments, conveying or assigning such real, personal or mixed property, and in case of a sale of any of my real estate by such trustee under the terms of this will, the purchaser or purchasers thereof shall not be required to see to the application of the purchase money derived from the sale of such real estate, it being my in-

your complainants will be deprived of their rights therein; that no purchaser will buy said property at its value when it is so evident that the trustee under said will had no authority to execute the said deed of trust, and irreparable injury will be done to your complainants, who are without remedy at law unless this honorable court will enjoin said sale.''

A. N. Pettigrew and Pinkey Williams are made defendants, and the court is asked to enjoin the sale of the real estate involved. A construction of the will and agreement made exhibits with the bill is prayed for as well as that Pinkey Williams' authority as trustee be terminated; that the deed of trust of December 12, 1925, be declared null and void, and the property be decreed to be vested in complainants in fee simple.

The court granted a temporary injunction pursuant to the prayer of the bill.

A. N. Pettigrew, trustee, was the only defendant to

tention to give my said trustee hereunder as full and complete power in the premises as if I were living and handling said property; but this devise is made subject to the following conditions, that is to say: That so long as my said wife lives, or until she remarries, she shall, in leiu of any interest or estate she may have by law in my property, real or personal, be entitled to receive (and shall pay herself) one-third of the net rents and profits collected and received by her as my trustee hereunder from my real estate and also one-third of the net income received by her as trustee from my personal estate, but in case my said wife remarries, then her right to receive said one-third interest in said rents and profits and income shall immediately cease and determine, and also all right, title, interest and estate of whatsoever kind of my said wife in my said real and personal property shall also thereupon immediately cease and determine, that being our understanding as set out above. In case my said trustee shall sell any of my real estate or dispose of any of my personal property, under the powers herein given her, then I wish the money derived from such sale or disposition of such property to be re-invested, and when so re-invested, the same shall be held by my said trustee upon the same terms and conditions as are set forth above. I desire and request the court that no bond or security be required of my said wife as trustee hereunder.

"Third: I hereby appoint my said wife, Pinkey Dobbins, the executrix. of this my will, and ask that no security be required of her as such, and I also ask that no appraisement be made of my personal estate.

"Witness my hand and seal this the 29th day of Sept., 1911.''

appear and he demurred to the bill, and for grounds of demurrer alleged: "The bill of complaint is without equity because a proper interpretation of the will and contract set out in the bill of complaint shows that the construction placed on the will by complainants in the said bill of complaint is incorrect, and that the remarriage of Pinkey Dobbins did not terminate the trust set up in the said will; that the condition against remarriage was actually invalid, but if not so it was directed to and affected only the personal interest of the widow." The trial court held: "That the testator plainly evinced his intention that his entire estate should be kept together, for the purpose expressed in the will, "as long as possible," and to that end devised and bequeathed all his property, real and personal, to the wife to hold in trust for the purpose stated in the will.

"That from the fact the will directs that no security be required of the trustee, and the wife was also appointed sole executrix without security, the testator displayed the confidence he had in his wife and in her discharge of the duty resting upon her as the natural guardian of the children after his death, whether she remarried or not.

"That the provision that her interest in the income of the trust estate should cease upon her marrying again was not intended to and did not have the effect of limiting the continuance of the trust, any more than her death would have done.

"* * the intention of the testator sufficiently appears upon the face of the will to erect a trust which should continue beyond either the death or remarriage of his widow.

"The court doth therefore, adjudge, order and decree that the demurrer to the bill be sustained and the bill of complaint be dismissed, the defendants to recover

their costs of the plaintiffs; and the injunction heretofore awarded having by agreement of the parties been regarded as extended until the court passed upon the questions, the injunction is now to be taken as expired and dissolved, subject to the suspension of this decree."

We have presented to us therefore upon this appeal the construction of the agreement and the will, upon the specific point as to whether the trusteeship of Pinkey Dobbins ceased and determined upon her remarriage.

[1] The complainants of course contend that it did, and in addition that the trust estate also terminated upon the widow's death or remarriage. Pettigrew contends that the trust was intended to continue beyond the death or remarriage of the widow and that her trusteeship continued until the termination of the trust or with her death. Upon the demurrer all the allegations of the bill properly pleaded are taken to be true, and hence we have only the question of the intention of the testator to be gathered from his will, with reference to the trust created thereby and the trusteeship of his wife.

[2] Many cases are cited in the briefs of counsel which are more or less in point but we can expect and usually get but little help from cases in the construction of wills. Each will has its own peculiar verbiage and surrounding circumstances and the object and meaning of the testator must be gathered from these.

[3] The intention of the testator as to the trust he created by the instant will is by no means easy of ascertainment, but we are inclined to think that the learned trial court erred in holding that the testator intended that his wife should remain as trustee of his :festate i she remarried.

The conclusion of the trial court that the trusteeship of the widow continued after her second marriage is based upon the premises just above set out.

We agree that it was the testator's intention to keep his estate together for the purpose of the trust "as long as possible," and to this end devised and bequeathed it all to his wife in trust.

We think, however, so far as the second proposition is concerned the whole will and the agreement show that the testator's confidence in his wife as trustee for the benefit of his children was limited to the period of her widowhood. He certainly did not desire that she should, after her remarriage, be the recipient any longer of his bounty. He provided against this not only by his will but also by written contract with her. All of which shows that his chief concern was his children. The expressed object of the trust is that "by keeping my estate together as long as possible, it would provide an income for my wife and children at the smallest possible cost," and the devise to his wife of his entire estate in trust was for this purpose. When she remarried, by the express terms of the will the estate was no longer to be kept together for her benefit. Thereafter it was to be kept together only for the benefit of the children. Her "right, title and interest in his estate of every kind and description *ipso facto* ceased and determined," and then follows the significant provision "but this devise (referring to the devise to his wife as trustee) is made subject to the following conditions, that is to say, that so long as my said wife lives, *or until she remarried*," and then follows the provision for the wife during widowhood.

We think therefore there was nothing personal in the selection of the wife as trustee of the devise of the testator's entire estate, but that the devise to her was

for as long as she lived, *or* until she remarried.   The
testator proceeds, immediately after limiting his wife
to one-third of the income from his estate to declare:
"But in case my said wife remarries, then her right to
receive said one-third interest in said rents and profits
and income shall immediately cease and determine, and
*also* all right, title, interest and estate of whatsoever
kind of my said wife in my said real and personal prop-
erty shall also thereupon immediately cease and deter-
mine, that being our understanding as set out above."
From all of which it seems clear to us that while the
testator had confidence in his wife as long as she
remained his widow to see to it that the real objects
of his bounty were provided for, and that she was also
provided for, he did not trust her to carry out the pro-
visions of this trust if she became subject to the influ-
ence of another husband or her interest became divided
between his children and her children by a second
marriage.

[4] If the testator had only intended to terminate
the income provided for his widow during her widow-
hood, it seems clear that after he had provided that in
case his wife remarried her right to receive one-third
interest in the rents, etc., from his estate shall imme-
diately cease, he would have said no more.   It was
already perfectly clear that upon remarriage, her
income from his estate ceased and that with the cessation
of income all her interest in the estate necessarily
ended, except her interest as trustee.   But the testator
added, "and also all right, title and interest and estate
of whatsoever kind of my said wife in my said real and
personal property *also* thereupon immediately cease
and determine."   This language is certainly broad
enough to include the trust estate in the wife and we
think, reading the will as a whole, it was clearly the

testator's intention to terminate the wife's trusteeship also.

*In re Schriever's Estate*, 91 Misc. Rep. 656, 155 N. Y. S. 826, affirmed by the New York Supreme Court and reported in 174 App. Div. 113, 160 N. Y. S. 937, that court said: "The power to sell realty given by a will to the testators widow and executor, will terminate with the widow's remarriage, where the will specifies that on her remarriage she shall forfeit all her right in the estate, except her right of dower." The revocation of the power to sell in this case was based not upon an express revocation of the power, but upon implication from the language used, that she shall forfeit all her rights in the estate.

In the instant case, by language equally as broad as that used in the *Schriever Case*, the testator we think revoked the trusteeship of his wife—"but in case my said wife remarries, then her right to receive said one-third interest in said rents and profits and income shall immediately cease and determine, and also all right, title, interest and estate of whatsoever kind of my said wife in my said real and personal property shall also thereupon immediately cease and determine, that being our understanding as set out above."

It is inconceivable to us that the testator would destroy his wife's interest in his estate upon her remarriage, as he certainly and admittedly did, and then leave it in her power to destroy his expressed intention to use the estate for the maintenance and support of his children.

We conclude therefore that the widow's powers as trustee ceased upon her remarriage.

That the testator intended that remarriage was the same as death, so far as the trusteeship of his widow was concerned. That the trust would continue during

the minority of his children, whether the wife remained as trustee or not.

That the bill stated a case for relief and should not have been dismissed on demurrer.

*Reversed and remanded.*